UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON PRAVETTONE and
DANIELLE PRAVETTONE,

    Plaintiffs,

vs.                                                    Case No. 13-11716

CARGOTEC OYJ, a foreign profit corporation,        HON. AVERN COHN
CARGOTEC USA, INC., a foreign profit
corporation, HAB Inc., d/b/a CARGOTEC
USA, Inc., a foreign profit corporation,
and OLSERGS GROUP, individually and
d/b/a OLSBERGS HYDRAULICS AB,

    Defendants.
_____/

**MEMORANDUM AND ORDER**
**GRANTING DEFENDANT CARGOTEC OYJ'S MOTION TO DISMISS FOR LACK OF**
**PERSONAL JURISDICTION (Doc. 7)**
**AND**
**GRANTING DEFENDANT OLSBERGS HYDRAULICS AB AND OLSBERGS GROUP**
**D/B/A OLSBERGS HYDRAULICS AB'S MOTION TO DISMISS FOR LACK OF**
**PERSONAL JURISDICTION (Doc. 6)**

## I. Introduction

This is a products liability case. Plaintiff Jason Pravettone is suing multiple defendants asserting product liability claims for design and manufacturing defects, breach of warranties, and failure to warn/inadequate warnings relating to a mobile crane. The complaint alleges that plaintiff was injured while operating a crane with a remote control. Plaintiff says that the crane and/or the remote control did not perform properly, causing plaintiff to be struck with the load, fall, and sustain serious injuries. Plaintiff's wife, Danielle Pravettone, has asserted a claim for loss of consortium.

    Before the Court are separate motions to dismiss for lack of personal jurisdiction

filed by Cargotec Oyj and Olsbergs Hydraulics AB and Olsbergs Group d/b/a Olsbergs Hydraulics AB.  For the reasons that follow, the motions will be granted.

## II.  Background

### A.  General

On January 19, 2010, plaintiff was working for his employer, Square Deal Building Supply.  He was operating a HIAB crane[1] with a remote control loading pallets of shingles onto the roof of a home.  Plaintiff was positioned on the roof and wore the remote control in a "vest-like" manner to place two pallets of shingles on the roof. During the unloading process, the crane and/or its remote control "malfunctioned or was inadvertently activated" which caused the crane arm to move the load, striking plaintiff and knocking him off of the roof, resulting in injuries.

Plaintiff named the following defendants:

Cargotec Oyj
Cargotec USA, Inc.
HIAB, Inc. d/b/a Cargotec USA, Inc.
Olsbergs Group, individually
Olsbergs Group, d/b/a Olsbergs Hydraulics AB

### B.  Jurisdictional/Liability Allegations

As to Cargotec Oyj, the complaint alleges that

Cargotec Oyj was a foreign, profit corporation with its global headquarters located at Porkkalantaku 5, FI-0051, Helsinki, Finland.  The complaint also alleges that Cargotec Oyj designed, manufactured, marketed, distributed and/or sold HIAB cranes and/or remote control units across the United States, including in the County of Macomb, State of Michigan, and therefore Cargotec Oyj was at all times relevant to this lawsuit doing business in the County of Macomb Sate of Michigan.

---

[1]A HIAB crane is known in the industry as a loader crane.  It is generally described as a hydraulically powered articulated boom/ arm fitted to a truck or trailer and is used for loading/unloading.

2

Complaint at ¶ 2.

The allegations as to Olsbergs Group are substantially the same:

> Olsberg Group ("Olsbergs") was and is a foreign, profit corporation . . . had its principle place of business in Eksjo, Sweden; Olsbergs designed, manufactured, marketed, distributed, and sold HIAB cranes and/or remote control units in States, including in the County of Macomb, State of Michigan, and therefore Olsbergs was at all times relevant to this lawsuit doing business in Michigan.

Id. at ¶ 5.

As to Olsbergs Hydraulics AB, the complaint alleges:

> Olsbergs Hydraulics AB was and is a foreign, profit corporation . . . had its principle place of business in Eksjo, Sweden; Olsbergs Hydraulics AB designed, manufactured, marketed, distributed, and sold HIAB cranes and/or remote control units in States, including in the County of Macomb, State of Michigan, and therefore Olsbergs was at all times relevant to this lawsuit doing business in Michigan.

Id. at ¶ 6.[2]

### III. Motion to Dismiss Standard

When bringing an action in federal court, the plaintiff bears the burden of establishing that jurisdiction exists. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). The district court has discretion to either; "decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." Theunissen, 935 F.2d at 1458.

When the Court does not conduct an evidentiary hearing the plaintiff need only

---

[2] The complaint makes virtually the same jurisdictional allegations as to all of the defendants. That is, that each defendant "designed, manufactured, marketed, distributed, and sold HIAB cranes and/or remote control units" in the United States and Michigan.

make a prima facie showing of personal jurisdiction. Kroger Co. v. Malease Foods Corp., 437 F.3d 506, 510 (6th Cir. 2006). "[W]e do not weigh the facts disputed by the parties but instead consider the pleadings in the light most favorable to the plaintiff, although we may consider the defendant's undisputed factual assertions." Conn v. Zakharov, 667 F.3d 705, 711 (6th Cir.2012) (emphasis added). Here, the motions will be decided based upon the complaint and the affidavits submitted.

Importantly, when a court resolves the issue as to whether it has personal jurisdiction on the basis of written submissions alone, the plaintiff "may not rest on [her] pleadings to answer the movant's affidavits, but must set forth, by affidavit and otherwise ... [set forth] specific facts showing that the court has jurisdiction." Serras v. First Tennessee Bank National Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). If the pleadings and affidavits set forth the facts with sufficient particularity, a court must ignore contrary assertions by a defendant. Id. at 1215.

### IV. Personal Jurisdiction

All defendants have challenged the assertion that the Court has properly exercised personal jurisdiction over them. In a diversity case—as here—a court must determine if personal jurisdiction is appropriate by examining the law of the state in which the district court sits and the due process clause of the Fourteenth Amendment. Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 888 (6th Cir. 2002). In Michigan, there are two "long-arm" statutes which authorize an exercise of personal jurisdiction over non-resident defendants. General personal jurisdiction exists over any corporation that is incorporated in Michigan, consents to jurisdiction, or engages in a continuous and systematic business activity within the state. Mich. Comp. Laws §

600.711.  Limited personal jurisdiction may be exercised over a defendant who has developed certain minimum contacts with the forum state but only over the claims which arise from or relate to those contacts.  Mich. Comp. Laws § 600.715; Theunissen v. Matthews, 935 F.2d 1454, 1460 (6th Cir. 1991).  All defendants contend that both general and limited personal jurisdiction is lacking.  The Court will address each defendant in turn below.

### V.  Cargotec Oyj

#### A.  General Personal Jurisdiction

Regarding general personal jurisdiction under M.C.L. § 600.711, Cargotec Oyj asserts that plaintiffs have not alleged that it is incorporated under Michigan law or that it has consented to an exercise of personal jurisdiction over them.  The Court agrees.

Cargotec Oyj has attached the Declaration of Outi Aaltonen, General Counsel of Cargotec Oyj.  He affirmatively states that Cargotec Oyj is not incorporated in the State of Michigan; rather Cargotec Oyj exists by virtue of the laws of the country of Finland. (Aaltonen Declaration at ¶¶ 2, 13)  In addition, Cargotec Oyj has not consented to and does not consent to the jurisdiction of the courts of this State.  (Id. at ¶ 40)  Therefore, this Court does not have general jurisdiction over Cargotec Oyj under M.C.L. §600.711(1) and (2).  Additionally, Cargotec Oyj does not carry on "continuous and systematic" activities in the State of Michigan so as to be "present" in Michigan.  (Id. at ¶ 40).  Plaintiffs have not demonstrated or otherwise cast doubt on Cargotec Oyj's assertions as to its lack of activity in Michigan.  Therefore, there is no general jurisdiction under M.C.L. § 600.711(3).

#### B.  Limited Personal Jurisdiction

Limited personal jurisdiction is analyzed under Michigan's "long arm" statute, M.C.L. § 600.715. Limited personal jurisdiction may be exercised over a defendant who has certain minimum contacts with the forum over claims that arise from or relate to those contacts. Theunissen, 935 F.2d at 1459–61. Under the Michigan statute, limited personal jurisdiction may be exercised over a corporation that has one of the following relationships with the state:

> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

M.C.L. § 600.715. A single contact with the forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim. Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc., 148 F.3d 1355, 1359 (Fed. Cir.1998). The due process requirements parallel to some extent the terms of the statute. The Sixth Circuit has developed a three part analysis to determine whether sufficient minimum contacts exist to confer jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Neogen Corp., 282 F.3d at 890 (internal quotation omitted). Under the first prong, "purposeful availment" means that a defendant's "contacts proximately result from the actions by the defendant that create a substantial connection with the forum State."

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (emphasis in original). This purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Id. at 475.

Here, plaintiffs have not made a showing that Cargotec Oyj "purposefully availed" itself of the privilege of doing business in Michigan. As noted above, Cargotec Oyj has not transacted any business in Michigan. It has not "deliberate[ly] under[taken] to do our cause[d] an act or thing to be done in Michigan." Khalaf v. Bankers & Shippers Insurance Co., 404 Mich. 134, 153, 273 N.W.2d 811 (1978) (defining purposeful availment). As Aaltonen's Declaration makes clear, Cargotec Oyj is a foreign company incorporated under the laws of Finland, with its principal place of business in Helsinki, Finland. (Aaltonen Declaration at ¶¶ 2, 13) Cargotec Oyj is not presently, and has never been, licensed to do business in the State of Michigan, and has never sought any qualification to conduct business within this State. (Id. at ¶ 16) Cargotec Oyj does not have, and has never had, any direct affiliated corporate entity that maintains an office or conducts business in this State. (Id. at ¶ 20) Cargotec Oyj does not have, and has never had, a designated agent for service of process in the State of Michigan. (Id. at ¶ 15) Cargotec Oyj does not maintain, and has never maintained, any offices, bank accounts, telephone listings, assets, or personal or real property in the State of Michigan. (Id. at ¶¶ 21-25) Cargotec Oyj does not and has never owned any stock, security, or negotiable or non-negotiable instrument in the United States. (Id. at ¶ 26) Cargotec Oyj does not have, and has never had, any directors, officers, employees, or

agents who are assigned to duty in Michigan, or who participate in the purchase, sale, distribution, resale, financing, or service of goods or services in Michigan. (Id. at ¶¶ 17-19) Cargotec Oyj does not send, and has never sent, representatives to the State of Michigan for service or repair of any products, to assist in the assembly or installation of any products, or to attend business meetings. (Id. at ¶¶ 29-32) Cargotec Oyj does not sell products over the Internet to customers in the United States or in the State of Michigan, and does not solicit, and has never solicited, business or advertised in Michigan. (Id. at ¶¶ 27-29) Cargotec Oyj does not have, and has never had, any directors, officers, employees, business agents or representatives that are or were involved in the sale or marketing of products sold in Michigan. (Id. at ¶ 19) Cargotec Oyj does not have any financial ties to the State of Michigan. (Id. at ¶ 34) Simply stated, Cargotec Oyj has no presence in the State of Michigan and has no contacts whatsoever with the State of Michigan; it is in fact a Finland holding company that has no connection with Michigan.

In response to Cargotec Oyj's motion, plaintiffs contend that they need to conduct jurisdictional discovery and therefore say that the motion is premature. The Court disagrees. Based on the record, as one court has said in rejecting a similar argument "the lack of jurisdiction is clear and discovery would serve no purpose." Macomb County Board of Commissioners v. Stellarone Bank, 2010 WL 891247, *4 (E.D. Mich. Mar. 10, 2010). See also Carribean Broadcasting Sys. Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1089–90 (D.C. Cir. 1998) (applying a long-arm statute similar to Michigan's and collecting decisions denying discovery where the plaintiff has failed to present any jurisdictional facts or "colorable basis for jurisdiction" in response to

a motion to dismiss and supporting affidavit or where the plaintiff relies on "mere speculation" or unsupported "hope" that discovery will uncover inaccuracies in a defendant's affidavit.) Plaintiffs have not put forward any jurisdictional facts, but rather simply speculate that discovery could establish personal jurisdiction. This is insufficient reason to deny Cargotec Oyj's motion.

## VI. Olsbergs Hydraulics AB's and Olsbergs Group d/b/a Olsbergs Hydraulics AB

### A. Proper Defendant

"Olsbergs Group d/b/a/ Olsbergs Hydraulics AB" is a non-entity. As explained in the Declaration of Jan-Erik Steen, Olsbergs Group has never had a certificate of standing, articles of incorporation or any corporate form, any tax status owners or operations, or been a registered business in Sweden or any other jurisdiction. As such, it is DISMISSED. The proper defendant is Olsbergs Hydraulics AB (Olsbergs).

### B. Waiver

As an initial matter, plaintiffs contend that Olsbergs waived the right to contest personal jurisdiction because counsel filed a general appearance in this case. Olsbergs argue that plaintiffs have relief on a "misleading technicality." Because waiver is a threshold issue, the Court will address it first.

Specifically, plaintiffs argue that the general attorney appearances, filed for Olsbergs on April 16, 2013 by the law firm of Miller, Canfield, Paddock and Stone, P.L.C. (Miller Canfield), constitutes a waiver of Olsbergs' personal jurisdiction challenge.[3] In support, plaintiffs cite Gerber v. Riordan, 649 F.3d 514 (6th Cir.

---

[3]The Court puts aside the fact that this argument is inconsistent with the plain language of Fed. R. Civ. Pro. 12(h)- -entitled "Waiving and Preserving Certain Defenses"--which does not mention entries of appearance and nothing to indicate that

2011).  In Gerber, the Sixth Circuit held that the defendants waived their personal jurisdiction defense because defendants had filed a general appearance nearly three years before filing the jurisdictional motion to dismiss.  Id. at 518-19.  Within those three years, the Sixth Circuit highlighted the extent of the defendants' participation in the proceedings prior to filing the motion to dismiss, which included:  filing a motion to stay litigation pending arbitration; filing a motion to vacate a default judgment previously entered against defendants; filing an opposition motion to plaintiff's motion for mediation; participation in a case management conference with the court; filing a motion for an extension of time to file discovery responses; filing a motion to enforce a settlement agreement; serving Rule 26 discovery responses; and participating in a pre-trial conference with the court.  Id.  In finding that defendants waived the right to challenge personal jurisdiction, the Sixth Circuit states that "[o]nly those submissions, appearances and filings that give 'P]laintiff a reasonable expectation that [Defendants] will defend the suit on the merits or cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking' . . . . result in waiver of a personal jurisdiction defense."  Id. at 519 (citing Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A., 623 F.3d 440, 443 (7th Cir.  2010)).  The Sixth Circuit found that the defendants' filing of the general appearance alone was sufficient to meet the above criteria when viewed under the circumstances.

      The Court is not inclined to interpret the holding in Gerber to stand for the proposition, as plaintiffs suggest, that the that the filing of a general appearance is

---

filing a "general" rather than "special" appearance could waive a personal jurisdiction defense.

dispositive on whether a personal jurisdiction defense is waived. Indeed, the Sixth Circuit has recently confirmed that Gerber does not call for the return of the mechanical, pre-Rule 12, "special" appearance requirement in evaluating whether a general appearance waives the defense of personal jurisdiction. In King v. Taylor, 694 F.3d 650, 659 (6th Cir. 2012), the Sixth Circuit explained

> We recently clarified the test for finding forfeiture of a personal-jurisdiction defense through conduct: **we ask whether a defendant's conduct prior to raising the defense has given the plaintiff "a reasonable expectation" that the defendant will defend the suit on the merits or whether the defendant has caused the court to "go to some effort that would be wasted if personal jurisdiction is later found lacking."** Gerber v. Riordan, 649 F.3d 514, 519 (6th Cir. 2011) (quoting Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A., 623 F.3d 440, 443 (7th Cir. 2010)). **We consider all of the relevant circumstances.** Hamilton, 197 F.3d at 61. Recognizing that service of process is simply the means by which a defendant receives notice of an action and is formally brought within a court's jurisdiction, whereas personal jurisdiction concerns the fairness of requiring a defendant to appear and defend in a distant forum, we agree with the Second Circuit that, as between the two defenses, it is relatively easier to find forfeiture of a service defense. See id., 197 F.3d at 60; Datskow v. Teledyne, Inc., 899 F.2d 1298, 1303 (2d Cir.1990).

King, 694 F.3d at 659 (footnote omitted) (emphasis added).

In King, the fact that the defendant undertook "voluntary, active, and extensive" participation in the case, including discovery, until the motion for summary judgment stage--led the Sixth Circuit to find defendant waived the right to contest personal jurisdiction. Thus, the test for waiver is not based on the technicality of the appearance filing. Id. at 660-61. Rather, the test is whether the plaintiff had a "reasonable expectation" that the defendant, based on its conduct, would defend the suit on the

11

merits or that the court expended wasted effort. Id.[4]

Applying the "reasonable expectation" test, Olsbergs have not waived a personal jurisdiction defense. As explained in the Affidavit of W. Mack Faison, Exhibit A to Olsbergs' reply, on April 16, 2012, Olsbergs' retained local counsel, Miller Canfield, along with Baker & McKenzie LLP, contacted Steve Brock, counsel for plaintiffs. In accordance with Local Rule 7.1, Olsbergs' counsel informed Brock that Olsbergs did not consent to personal jurisdiction and was not filing an answer, but was instead filing a motion to dismiss for lack of personal jurisdiction. Later that same day, Olsbergs, through Miller Canfield, sought timely removal to federal court from state court (Macomb County Circuit Court). Following Local Rule 83.20(f),[5] which requires that "local counsel must enter an appearance in the case," Miller Canfield filed appearances on that same day of April 16. Olsbergs filed its Rule 12(b)(2) motion to dismiss with this Court the following week, on April 23, 2013. Moreover, the Court held a status conference with the parties on April 26, 2012, at which the pending motions were discussed, including setting a briefing schedule for plaintiffs' response and defendants' reply. Counsel for Olsbergs also requested a stay of merits discovery until the jurisdictional issue was

---

[4]Plaintiffs also cite M & C Corp. v. Erwin Behr GmbH & Co., KG, No. 11-2167 (6th Cir. Dec. 17, 2012) (unpublished)  Putting aside that the opinion is unpublished and therefore not precedential, King, which is published, confirms that the test under Gerber is based on the plaintiff's "reasonable expectation" that the defendant, based on its conduct, will defend the suit on the merits. See King, 694 F.3d at 659. Moreover, M & C is distinguishable from this case on the facts: the M & C litigation had lasted more than twenty years before the motion to dismiss for lack of jurisdiction was filed. Id. at slip op 2-5. Here, the time frame was one week. Under the facts of this case, plaintiffs simply cannot maintain that Olsbergs would defend the suit on its merits.

[5]E.D. Mich. LR 83.25 does not distinguish between types of appearances, suggesting that various types of conduct, such as filing a pleading, can constitute an appearance.

resolved. Under these circumstances, Olsbergs did not waive the right to contest personal jurisdiction simply because Miller Canfield filed a general appearance.

### C. Personal Jurisdiction

Turning to the merits of the motion, the first question is whether general or limited personal jurisdiction is present. It is not. As explained in the Declaration of Christina Henriksson (Exhibit B to Olsbergs Motion), Olsbergs is not incorporated in Michigan and does not consent to jurisdiction in Michigan. (Henriksson Declaration at ¶¶ 1, 17). Olsbergs, as a foreign corporation, has no direct contacts with Michigan, much less a "continuous and systematic" relationship with Michigan. Olsbergs is located in Sweden, has no offices in the United States (Id. at ¶ 16). It is not registered to do business in Michigan and has never had any registered agents or employees in Michigan. (Id. at ¶ 17). It has no sales representatives in the United States, including Michigan. (Id. at ¶ 18). It is a Swedish company that sells exclusively to European entities (Id. at ¶¶ , 8, 10). It has never conducted, transacted, or solicited business in Michigan. (Id. at ¶¶ 13, 19, 20). It has never made a direct sale within the United States, including Michigan. (Id. at ¶ 7). Moreover, Olsbergs has never advertised in Michigan or make its products for sale in Michigan through the internet. (Id. at ¶¶ 19, 20). It does not own any real estate in Michigan. (Id. at ¶ 21).

Pertinent to this case, Olsbergs admits that manufactured a remote control system.[6] However, it sold the system to co-defendant HIAB, a Finnish company, for assembly into HIAB cranes at HIAB's manufacturing facility in Spain. Olsbergs has no

---

[6] Attached as Exhibit A is an excerpt from Olsbergs website which describes its remote control system.

knowledge what county, much less a specific state, the final cranes were to be distributed. (Id. at ¶¶ 8, 11, 12, 13). Olsbergs says it has never addressed a warranty claim in the United States and has sent no employees to the United States. (Id. at ¶ 24). Any warranty claims against it are handled by HIAB in Finland or through HIAB's factory in Spain. (Id. at ¶ 8). This case marks the first time Olsbergs learned of an allegation of a defective crane, carrying an Olsbergs component part, being operated in Michigan. (Id. at ¶ 24).

As the above makes clear, the Court does not have general or limited personal jurisdiction over Olsbergs. Olsbergs is a component-part manufacturer who placed its product into the stream of commerce which eventually ended up in a finished product that made its way to Michigan. It is no different from the defendant in Asahi Metals Industry Co., Ltd v. Superior Court of California, 480 U.S. 102(1987). In Asahi Metals, the defendant was a Japanese company who manufactured valve stems in Japan and sold them to several tire manufacturers. One such tire manufacturer was a company in Taiwan. Defendant shipped its part to Taiwan where it was incorporated into a finished tire product and sold by the Taiwanese company to companies all over the world, including the United States and California. At some point, a products liability lawsuit was filed in California against the Taiwanese company following a motorcycle accident allegedly caused by a defective tire. The Taiwanese company sought to bring defendant into the lawsuit for indemnification purposes. The issue before the Supreme Court was whether personal jurisdiction existed over defendant in California. The Supreme Court held that personal jurisdiction over defendant was lacking. Relevant to this case, the Supreme Court explained:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. . . . But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

Asahi Metals, 480 U.S. at 112.[7]

Here, as in Asahi Metals, the exercise of personal jurisdiction over Olsbergs would not be reasonable or consistent with due process. Moreover, no amount of discovery is going to change the fact that personal jurisdiction is lacking.

### VII. Conclusion

For the reasons stated above, Cargotec Oyj's and Olsbergs' motions to dismiss for lack of personal jurisdiction are GRANTED. Cargotec Oyj and Olsbergs are DISMISSED as parties in the case.

SO ORDERED.

    S/Avern Cohn
UNITED STATES DISTRICT JUDGE

Dated: July 30, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 30, 2013, by electronic and/or ordinary mail.

    S/Sakne Chami
Case Manager, (313) 234-5160

---

[7]That is not to say that the personal jurisdiction in today's commercial world may be changing. In J. McIntyre Machinery, Ltd. v. Nicastro, 131 S.Ct. 2780 (2011), Justice Ginsberg in a dissent, joined by Justice Sotomayor and Justice Kagan, asked: "Is it not fair and reasonable, given the mode of trading of which this case is an example, to require the international seller to defend at the place its products cause injury?" J. McIntyre, 131 S.Ct. at 2800 (Ginsberg, J. dissenting) (footnote omitted).



# Olsbergs

Olsbergs Group | Products | Applications | Media | Contact | Olsbergs Racing

Hydraulic products
Electronic products

## Products

### A first class control system that works come rain come shine

Olsbergs develops, manufactures and markets electro-hydraulic control systems for mobile equipment applications with high standards of reliability, precision and performance.

Load-sensing, pressure-compensated proportional valves in a high-pressure, high-flow monoblock together with the MultiDrive 2 remote control form the hub of the Olsbergs system.

### Functionality – Fingertip Control

Olsbergs' systems are characterized by their outstanding control and coordination qualities thanks to patented innovations that control hydraulic cylinder movement regardless of loads and direction. Full valve and control lever proportionality provide the operator with a fingertip sensitivity in every movement.

### Economy and Productivity

Olsbergs hydraulics and remote controls are developed together to create optimum control systems in respect of performance, reliability, fuel consumption and functionality without compromising user friendliness, safety and low environmental impact.

### Quality down to the smallest detail – high reliability

Olsbergs' systems consist of a high-quality valve monoblock with hydraulic components that enjoy precision down to the smallest detail and modern electronics components of the highest industry standards. The products are factory tested before delivery to ensure function and performance.

Copyright © Olsbergs Group 2013